UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NSB HORATIO LLC,

    Appellant,

v.                                                  Case No: 8:20-cv-2976-WFJ

ANTHONY FRANK MANISCALCO,

    Appellee.
_____/

## ORDER

This matter comes before the Court on Appellant NSB Horatio LLC ("NSB")'s initial brief, Dkt. 19, appealing the United States Bankruptcy Court for the Middle District of Florida's final judgment in its adversary proceeding, No. 8:17-ap-134-CPM. Appellee Anthony Frank Maniscalco filed an answer brief, Dkt. 23. NSB also submitted a reply brief, Dkt. 33. In addition to carefully reviewing the filings and record, the Court heard oral argument from counsel. Upon consideration, the Court affirms.

## BACKGROUND

Appellee Anthony Maniscalco ("Debtor") filed a petition under Chapter 7 of the Bankruptcy Code on September 9, 2016. Dkt. 13 at 89. Eight years earlier, Anthony Development Group, LLC ("ADG"), of which Debtor was a principal,

began developing a four-unit townhome, referred to herein as the Horatio Property. Dkt. 13 at 85; Dkt. 24 at 5. The Horatio Property was partially funded by a series of loans guaranteed by Debtor and secured by mortgages on the same. Dkt. 24 at 5. The original creditor on the loans was Heritage Bank of Florida, which later assigned its interest to Centennial Bank. Dkt. 24 at 5. Centennial Bank filed for foreclosure on the Horatio Property in August 2015, then assigned its interest to Appellant NSB. Dkt. 24 at 5.

While the foreclosure was pending, ADG transferred the Horatio Property to NSB through a special warranty deed in lieu of a foreclosure settlement. Dkt. 24 at 6. The deed contained an "as-is" clause, and NSB inspected the property before accepting the deed in March 2016. Dkt. 11-2 at 2. However, after acquiring the Horatio Property, NSB learned it was constructed using Chinese drywall,[1] which poses serious environmental and health risks. Dkt. 18-12 at 137. NSB removed and replaced the Chinese drywall in all four units at a total cost of roughly $400,000. Dkt. 18-12 at 137. Debtor argues that he was unaware of the use of Chinese drywall within the Horatio Property, but NSB points to tests conducted on the property's drywall in 2009 that indicated that the drywall was manufactured in

---

[1] "Chinese drywall" is a generic term for a large and widespread type of drywall that, in past decades, was contaminated by faulty manufacture. Most of this drywall was manufactured in China. *See generally*, *In re Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047, 2021 WL 50455 (J.P.M.L. Jan. 5, 2021).

China. Dkt. 19 at 23; Dkt. 23 at 26. Debtor claims that, in relying on his contractor's interpretation of the test results, he believed these 2009 drywall reports did not indicate the presence of deleterious Chinese drywall. Dkt. 23 at 26.

After Debtor filed for bankruptcy in September 2016, NSB initiated an adversary proceeding in February 2017 by filing a two-count complaint. Dkt. 18-7 at 11−12. In Count I, NSB argued that Debtor's failure to disclose the presence of Chinese drywall within the Horatio Property, which Debtor transferred to NSB while he was serving in a fiduciary capacity, rendered his debt non-dischargeable under 11 U.S.C. § 523(a)(4). Dkt. 18-7 at 11. In Count II, pursuant to 11 U.S.C. § 727(a)(4), NSB objected to the granting of a discharge to Debtor due to a knowing and fraudulent false oath or account regarding the value of his interest in a closely held company called Maniscalco Enterprises, LLC ("ME LLC"). Dkt. 18-7 at 11−12.

In December 2017, Debtor filed a motion for summary judgment on Count I of NSB's adversary complaint. Dkt. 18-9. The United States Bankruptcy Court for the Middle District of Florida held a hearing on the motion and subsequently entered an order granting summary judgment for Debtor on February 27, 2018. Dkt. 18-2 at 1. In March 2018, the bankruptcy court held a trial on Count II of the adversary complaint. Dkts. 18-12 & 18-13. The bankruptcy court entered an order in October 2015 that found for Debtor on Count II and reaffirmed its prior

summary judgment ruling in favor of Debtor on Count I. Dkt. 18-4. On December 1, 2020, the bankruptcy court entered its final judgment. Dkt. 18-5. NSB now appeals. Dkt. 1.

In its initial brief, Dkt. 19, NSB raises three issues on appeal: (1) whether the bankruptcy court erred in granting summary judgment in favor of Debtor on NSB's 11 U.S.C. § 523(a)(4) fraud claim; (2) whether the bankruptcy court erred in overruling NSB's 11 U.S.C. § 727(a)(4) objection to Debtor's discharge; and (3) whether the bankruptcy court erred in refusing to give any weight to the expert report of NSB's forensic accountant. Dkt. 19 at 31, 41, 58.

## LEGAL STANDARD

On appeal, a bankruptcy court's legal conclusions are reviewed *de novo* and its factual findings are reviewed for clear error. *In re Hood*, 727 F.3d 1360, 1363 (11th Cir. 2013). *De novo* review requires the reviewing court to look at an issue as if it were the first court to consider it. *United States v. Williams*, 340 F.3d 1231 (11th Cir. 2003). Under clear error review, a factual finding is clearly erroneous when the entirety of the evidence leaves the reviewing court with the "definite and firm conviction" that a mistake has been made. *Lee v. Wiand*, 603 B.R. 161, 169 (M.D. Fla. 2018) (citing *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007)).

A bankruptcy court's evidentiary decisions are reviewed for abuse of

discretion. *See United States v. Brown*, 415 F.3d 1257, 1264−65 (11th Cir. 2005) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136. 141 (1997)). Under the abuse of discretion standard, a bankruptcy court's decision must be affirmed unless the court made a clear error in judgment or applied an improper legal standard. *In re Daughtrey*, 896 F.3d 1255, 1274 (11th Cir. 2018); *Lee*, 603 B.R. at 169. As such, this standard is highly deferential to the bankruptcy court. *In re Kulakowski*, 735 F.3d 1296, 1301 (11th Cir. 2013).

## ANALYSIS

### Section 523(a)(4) Fraud Claim

NSB claims that the bankruptcy court erred in granting summary judgment for Debtor on NSB's section 523(a)(4) fraud claim. Dkt. 19 at 16. According to NSB, the bankruptcy court incorrectly concluded that a fiduciary duty did not exist to trigger the application of that section. Dkt. 19 at 24. NSB contends that, as manager and principal of ADG, Debtor was acting in a fiduciary role with respect to ADG's creditor, NSB. Dkt. 19 at 25. While NSB admits that this corporate fiduciary duty alone is insufficient to amount to a fiduciary duty as understood in the section 523(a)(4) context, NSB claims that this duty "coupled with something else" will suffice to show the required fiduciary relationship. Dkt. 19 at 25. This "something else," NSB claims, is Debtor's duty under Florida law to disclose known defects of residential property. Dkt. 19 at 25.

5

As such, NSB's argument at the hearing largely centered on its contention that the Horatio Property is residential property. NSB argues that the bankruptcy court incorrectly found the Horatio Property to be commercial property, which NSB contends led to further incorrect conclusions that the duty to disclose defects did not apply and that the "as is" clause was of legal significance.[2] Dkt. 19 at 32, 38. Further, NSB takes issue with the bankruptcy court's inclusion of a damages element in its section 523(a)(4) analysis. Dkt. 19 at 25.

However, Debtor argues that no fiduciary relationship existed between the parties for purposes of section 523(a)(4). Dkt. 23 at 31. Debtor also contends that the Horatio Property was correctly determined to be commercial property, so he had no duty to disclose known defects to NSB. Dkt. 23 at 19. At the hearing, Debtor argued that even if this duty to disclose known defects did apply, it would need to arise in the context of fiduciary relationship under the Bankruptcy Code, which Debtor argues that NSB cannot show.  Debtor also asserts that he did not know of the Chinese drywall and, therefore, could not have disclosed its presence regardless of whether there was a duty to disclose known defects. Dkt. 23 at 25.

Under section 523(a)(4) of the Bankruptcy Code, an individual debtor is not

---

[2] In Florida, the seller of residential property has a duty to disclose known defects to the buyer. *Johnson v. Davis*, 480 So. 2d 625, 629 (Fla. 1985). An "as is" clause provides no exception to this duty of disclosure. *See id.* at 627. Conversely, sellers of commercial property in Florida have no duty to disclose known defects, so an "as is" clause is of legal significance in that context. *Agrobin, Inc. v. Botanica Dev. Assocs, Inc.*, 861 So. 2d 445, 446 (Fla. 3d DCA 2003).

discharged "from any debt for fraud or defalcation while acting in a fiduciary capacity[.]" This exception to discharge is only triggered when a fiduciary relationship exists between the debtor and creditor. *In re Hutchinson*, 193 B.R. 61, 65 (Bankr. M.D. Fla. 1996). The meaning of "fiduciary" under section 523(a)(4) is much narrower than the term's meaning under Florida law. *In re Blackburn*, 209 B.R. 4, 9 (Bankr. M.D. Fla. 1997). As such, a finding of a fiduciary relationship in this context requires the existence of an express or technical trust. *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993). An express or technical trust exists when there is a segregated res, identifiable beneficiary, and trust duties established by statute or contract. *In re Miceli*, 237 B.R. 510, 515−16 (Bankr. M.D. Fla. 1999). Florida bankruptcy courts have consistently held that the general fiduciary duties owed by corporate officers are insufficient to constitute the requisite fiduciary relationship under this section. *Id.* at 516; *see also Blackburn*, 209 B.R. at 9; *In re Allen*, 206 B.R. 606−07 (Bankr. M.D. Fla. 1997).

Here, no express or technical trust exists to establish a fiduciary relationship between Debtor and NSB. While NSB claims that Debtor's corporate fiduciary duty "coupled with something else" amounts to the requisite fiduciary capacity, this argument is unavailing. NSB cites to *Blackburn* for this proposition, but this interpretation of that case's language is a stretch. That opinion merely states that "the fiduciary duties owed to a Florida corporation by its officer and director under

7

state law are insufficient by themselves to constitute the 'fiduciary capacity' required under Section 523(a)(4)[.]" *Blackburn*, 209 B.R. at 9. NSB places great emphasis on the *Blackburn* court's use of the words "by themselves" while providing no other case law to support this theory that a corporate fiduciary duty "coupled with something else" is sufficient.

Even if NSB is correct in that a corporate fiduciary duty coupled with something else amounts to a fiduciary relationship under section 523(a)(4), it is unlikely that the duty to disclose known defects in real property would suffice as that added component. As previously stated, the existence of an express or technical trust is necessary to find that a fiduciary relationship exists under this section. This requires a showing of both an intent to form a trust and sufficient words to create a trust. *In re Kelley*, 84 B.R. 255, 229 (Bankr. M.D. Fla. 1988). There is no indication that Debtor and NSB ever used sufficient words or displayed any intent to create an express or technical trust. Moreover, the express or technical trust must have been established prior to the creation of the debt. *In re Fernandez-Rocha*, 451 F.3d 813, 816−17 (11th Cir. 2006). Here, the debt was created in 2008 when ADG obtained the loans used to fund the Horatio Property. Any express or technical trust that was established from Debtor's corporate fiduciary duty and supposed additional duty to disclose known defects of the Horatio Property was not created until 2016 when he transferred the deed to NSB.

Given there was no genuine issue as to whether Debtor was acting in a fiduciary capacity with respect to NSB, the bankruptcy court did not err in granting Debtor's motion for summary judgment. The other arguments raised by NSB in support of this claim, including its arguments surrounding the "as is" clause and the Horatio Property's status as commercial property, need not be addressed. The existence of a fiduciary relationship is a threshold matter and without such a relationship, a section 523(a)(4) claim cannot succeed.

**Section 727(a)(4) False Oath Claim**

NSB next argues that the bankruptcy court erred in overruling its objection to Debtor's discharge under section 727(a)(4) of the Bankruptcy Code. Dkt. 19 at 26. NSB contends that Debtor, a sophisticated businessperson, fraudulently undervalued his interest in ME LLC on his bankruptcy schedules through the use of an outdated balance sheet. Dkt 19 at 28−31. Debtor listed his interest in the company as being worth $148,516.50, which NSB argues is inconsistent with the amounts at which Debtor valued that interest prior to filing for bankruptcy. Dkt. 19 at 29−30. Specifically, NSB notes that Debtor consistently valued this interest as between $600,000 and $1,000,000 in the years before filing his bankruptcy petition. Dkt. 19 at 30. NSB also points to Debtor's testimony at his Rule 2004 Examination, which took place the month after he filed his bankruptcy schedules. Dkt. 19 at 30. At his 2004 Examination, Debtor testified that his interest in ME

LLC was worth at least $720,000. Dkt. 19 at 30−31. NSB testified that these facts show that Debtor's valuation of his interest in ME LLC was not made in good faith.

In response, Debtor argues that the bankruptcy court did not err in overruling NSB's section 727(a)(4) objection. Dkt. 23 at 37. Debtor explains that his interest in ME LLC was an entireties property that he owned with his wife and that his use of book value to measure that interest was appropriate. Dkt. 23 at 38. Debtor contends that even if the $148,516.50 amount was incorrect, a denial of discharge is not warranted because he valued this interest in good faith. Dkt. 23 at 41−42. Debtor testified that this amount only represents the interest's value at the time of the petition, not its continuing value or value at any other point in time. Regarding his 2004 Examination testimony, Debtor notes that his valuing of ME LLC at $720,000 was purely speculative, as it was based on a future transaction involving ME LLC's assets that never materialized. Dkt. 23 at 41. Debtor also argues that, as an entireties property, ME LLC was exempt from creditors, so any false oath regarding its value would not be "material" under section 727(a)(4). Dkt. 23 at 37−38.

Section 727(a)(4) provides that a debtor shall be granted a discharge unless the objecting party proves by a preponderance of the evidence that the debtor knowingly and fraudulently made a false oath or account in connection with the

case. *In re Leffingwell*, 279 B.R. 328, 339 (Bankr. M.D. Fla. 2002). Such a determination is a finding of fact reviewed for clear error. *See id.* at 340. A debtor's fraudulent intent must be shown by actual fraud. *Id.* at 350. Absent direct evidence of actual fraud, an objecting party may show actual fraud by either demonstrating that the debtor (1) engaged in a pattern of concealment or (2) displayed a reckless disregard for the truth. *Id.* (citing *In re Hatton*, 204 B.R. 477, 484 (E.D. Va. 1997)). Reckless indifference can be shown through a failure to amend an incorrect schedule. *In re Green*, 268 B.R. 628, 648 (Bankr. M.D. Fla. 2001). However, depending on the circumstances of the case, prompt amendments to incorrect schedules may cure an earlier omission. *Id.*

Moreover, a debtor's false oath or account must be material to warrant a denial. *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984). A false oath or account is material if its subject matter "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Id.* A creditor need not suffer harm for a false oath or affirmation to be material. *Id.* "Materiality goes to the degree and substance of the false oath or omission," not the debtor's motive. *Leffingwell*, 279 B.R. at 349–50. It is, therefore, not a defense to materiality to say that a fraudulently omitted or under-valued asset was exempt from creditors. *Id.* at 350; *In re Phillips*, 476 F. App'x 813, 819 (11th Cir. 2012) (citing *In re Chalik*, 748

11

F.2d 616, 618 (11th Cir. 1984)).

Here, the bankruptcy court found that NSB was unable to meet its burden in proving by a preponderance of the evidence that Debtor fraudulently undervalued his interest in ME LLC. First, the bankruptcy court determined that NSB did not meet its initial burden of proving that the value Debtor listed was false. *In re Maniscalco*, 2020 WL 6122656, at *3 (Bankr. M.D. Fla. Oct. 15, 2020). The bankruptcy court explained that NSB did not establish the true value of the ME LLC interest or provide any authority stating what valuation method Debtor should have used in calculating its value. *Id.* As explained by the bankruptcy court at trial, the Supreme Court expressly declined in *United States v. Craft*, 535 U.S. 274, 289 (2002) to declare a specific valuation method as proper for interests in entireties properties. Dkt. 13 at 133.

Next, the bankruptcy court pointed to balance sheets in the record that showed the declining value of ME LLC, further discrediting NSB's argument that Debtor's valuation of the interest was clearly false. *In re Maniscalco*, 2020 WL 6122656, at *3. The bankruptcy court also noted that this was not an instance of a complete omission of an assert from the schedules, but an undervaluation. *Id.* Moreover, it concluded that the $720,000 value upon which NSB primarily relies was purely speculative, given it was based on a transaction that never came to fruition. *Id.* Finally, the bankruptcy court decided that even if Debtor's listing of

12

his ME LLC interest was a false oath, it was immaterial because that asset was declared exempt. *Id.*

The bankruptcy court did not clearly err in denying NSB's objection to Debtor's discharge. A choice between two permissible views of evidence cannot be clear error. *In re Siewe*, 730 F. App'x 871, 875 (11th Cir. 2018) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). The bankruptcy court correctly noted that there is no set method that must be used in valuing interests in entireties property, so Debtor's use of book value was not plainly incorrect like NSB suggests. Moreover, NSB did not sufficiently demonstrate what Debtor's ME LLC interest was actually worth; without such information, the bankruptcy court did not err in determining that NSB failed to prove that Debtor's listing in the bankruptcy schedule amounted to a false statement. Given there are sufficient facts in the record to support the bankruptcy court's conclusion, it was not clearly erroneous to find that Debtor did not make a knowing and fraudulent false oath.

**Expert Report Claim**

In its initial brief, NSB also appeals the bankruptcy court's decision to disregard its expert report prepared by its forensic accountant. Dkt. 19 at 58. NSB argues that the expert report contained valuable information regarding the correct valuation method for Debtor's interest in ME LLC. Dkt. 19 at 43−44. Debtor did

13

not specifically address this issue in his answer brief, and neither party discussed this matter during oral argument. Regardless, this Court will address it.

Questions concerning the weight given to evidence are reserved for the factfinder. *Brown*, 415 F.3d at 1270. A court sitting as factfinder is free to decide how much, if any, weight to give expert testimony. *See id.* When a court serves as the factfinder during a bench trial and provides an account of the evidence that is plausible in light of the full record, it should not be reversed even if the reviewing court would have weighed the evidence differently. *Id.* Moreover, in considering witness testimony, a court must disregard any legal conclusions of witnesses. *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1128−29 (11th Cir. 2018).

Here, the bankruptcy court announced that it would "wholly disregard" the expert report after determining that the report contained no information that would aid the court. Dkt. 13 at 10. Specifically, the bankruptcy court noted that the report primarily espoused legal opinions and reiterated facts that were already available elsewhere in the record. Dkt. 12 at 17−19; Dkt. 13 at 8−10. The bankruptcy court's description of the expert report is not unfounded, as the report included several legal conclusions, including that Debtor had "an intent to avoid a large, single debt" and that "Debtor failed to make candid and full disclosure." Dkt. 18-35 at 19. The expert report largely consisted of summarizations of filings and testimony already present in the record before the bankruptcy court. *See, e.g.*, Dkt. 18-35 at

11–16.

Even if the bankruptcy court gave weight to the expert report, it is unclear how that would have changed the outcome of the case. While NSB argues that the report contained useful information regarding the true valuation of Debtor's ME LLC interest, the bankruptcy court noted that the report did not provide any specific alternative calculation for or ultimate value of that interest. *See* Dkt. 18-35 at 14–15. As such, the bankruptcy court cannot be said to have abused its discretion in refusing to give weight to the expert report, as it did not aid the court in its decision-making.

## CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is **AFFIRMED**. The Clerk is directed to enter judgment for Appellee, close the case, and transmit a copy of this order to the Clerk of the United States Bankruptcy Court for the Middle District of Florida.

**DONE AND ORDERED** at Tampa, Florida, on September 24, 2021.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record